NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HANOVER ARCHITECTURAL SERVICE, P.A.,<br><br>                   Plaintiff,<br><br>            v.<br><br>CHRISTIAN TESTIMONY-MORRIS, N.P., VISBEEN CONSTRUCTION CO., D.P., PETER RAYMOND WELLS, ARCHITECT, LLC, REINER GROUP, INC., ENERGY SAVING & ELECTRICAL CORP., INC., individuals JAMES CHANG, KENNETH J. VISBEEN, PETER RAYMOND WELLS, JINFAR LIU, and John Does 1-5,<br><br>                   Defendants. | Civil Action No. 10-cv-05455 (SDW)<br><br><br><br>**OPINION**<br><br><br>November 29, 2011 |

**WIGENTON**, District Judge.

This case comes before this Court on Defendants' Christian Testimony-Morris, N.P., Visbeen Construction Co., D.P., Peter Raymond Wells, Architect, LLC, Reiner Group, Inc., Energy Saving & Electrical Corp., Inc., individuals James Chang, Kenneth J. Visbeen, Peter Raymond Wells, Jinfar Liu, and John Does 1-5, Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **DENIES** Defendants' motion in part and **GRANTS** it in part.

I. **BACKGROUND**

This matter involves Hanover Architectural Service, P.A. ("Hanover" or the "Plaintiff") and Christian Testimony-Morris, N.P., Visbeen Construction Co., D.P., Peter Raymond Wells, Architect, LLC, Reiner Group, Inc., Energy Saving & Electrical Corp., Inc., individuals James Chang, Kenneth J. Visbeen, Peter Raymond Wells, Jinfar Liu, and John Does 1-5 (collectively the "Defendants").

Hanover alleges that Defendants used substantially similar designs that Hanover registered with the United States Copyright Office in the conversion of a warehouse to a church. (Am. Compl. ¶ 49, Ex. 21) (providing a copy of the allegedly infringing designs obtained from the Township of Parsippany Building & Construction Office).  In particular, Hanover points to a similarity in its designs and the Defendants' construction of a large and small sanctuary, gymnasium, cafeteria, kitchen, eleven classrooms, a nursery, multiple lounges, and over twenty other rooms and offices.  (*Id*. ¶ 48.)

Hanover filed a complaint against Defendants on October 21, 2010 seeking, *inter alia*, declaratory judgment, permanent injunctive relief, damages, costs, attorneys' fees and delivery of all copies and designs of the project in Defendants' custody or control for destruction.

On April 25, 2011, Defendants filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss").

II.   **FACTS**

In or around January 2005, Defendant James Chang ("Chang")—the president of Christian Testimony-Morris, N.P. ("the Church") and chairman of the Christian Testimony-Morris Building Committee—contacted Hanover regarding a new construction project.[1]  (Am. Compl. ¶¶ 6, 27.)  Chang asked Hanover to evaluate whether a warehouse, located at 42 Intervale Road, Boonton, New Jersey 07005, could be reconstructed into a church (the "Conversion Project").  (*Id.* ¶ 27)

Following multiple phone and in-person conversations about the Conversion Project, on March 13, 2005, Hanover and the Church entered into an agreement ("First Agreement").  (*Id.* ¶ 30, Ex. 9.)  Under the First Agreement, Hanover would "review [the] existing building plans" and provide "[a]rchitectural design for the purpose of [obtaining a] variance" from the Township of Parsippany Building & Construction Office.  (*Id.*)  Between March 13, 2005 and September 20, 2005, Chang informed Hanover on multiple occasions that subject to the successful outcome of the variance application, the Church planned to retain Hanover to administer the building of the Conversion Project.  (*Id.* ¶ 31.)  Chang also mentioned to Hanover, on several occasions, that the Church was experiencing temporary financial hardship.  (*Id.*)

On September 9, 2005, Hanover e-mailed a proposed agreement to the Church for the Conversion Project's first phase of design ("Second Agreement").  (*Id.* ¶ 32, Ex. 10-11.)  Under the first phase, Hanover would provide building, electrical, plumbing and fire protection design, and modifications that were required to comply with building code requirements during the permit application process.  (*Id.* ¶ 34, Ex. 11.)  On September 20, 2005, Chang executed the

---

[1] Plaintiff states that it had a long working history with Defendant Christian Testimony-Morris.  (*See* Pl.'s Br. 21)(citing Am. Compl. *passim.*).  In 2000, Plaintiff provided architectural services, including construction administration services, to Defendant for a 5,000 square foot expansion project at 260 Tabor Road, Morris Plains, New Jersey. (Am. Compl. ¶25.)

3

Second Agreement on behalf of the Church. (*Id.* ¶ 34, Ex. 11.) Plaintiff claims that at execution, Chang informed Chiming "Jimmy" Liou ("Liou")—the principal of Hanover—that the Church intended to retain Hanover to administer the building of the Conversion Project, subject to the approval of the variance application. (*Id.* ¶ 35.) The Second Agreement, which included an outline of the pricing structure for construction administration (*Id.*, Ex. 10-11.), reflected a price that was below fair market value. (*Id.* ¶ 33.) Hanover claims that it agreed to this pricing structure because it believed that it would recoup its invested hours when it administered the building of the Conversion Project. (*Id.*)

On October 19, 2006, Hanover and the Church executed a third agreement for the second phase of the design of the Conversion Project ("Third Agreement"). (*Id.* ¶ 36.) Under the second phase, Hanover would provide additional building, electrical, and plumbing design, and modifications that were required to comply with building code requirements during the permit application process. (*Id.*, Ex. 12.) Again, Hanover claims that in the Third Agreement, it approved of prices for services that were below fair market value, believing it would recoup its invested hours during the administration of the Conversion Project. (*Id.* ¶ 37.)

As of December 12, 2006, Hanover completed the variance design work as required under the First Agreement. (*Id.* ¶ 38.) Then, on June 7, 2007, Hanover delivered preliminary designs to the Church for a building permit application with the Township of Parsippany Building & Construction Office. (*Id.* ¶ 39.) After the designs were delivered, Chang informed Hanover that the Church would not retain Hanover to administer the building of the Conversion Project. (*Id.*)

In June 2007, Hanover registered a copyright on the preliminary design of the Conversion Project as an "Architectural Work." (*Id.* ¶ 58.) The Certificate of Registration (VA 1-627-039) from the United States Copyright Office became effective on September 7, 2007. (*Id.*, Ex. 18.)

By letter dated September 5, 2007, Hanover advised Chang that its designs for the Conversion Project were copyright protected and could not be used or modified without a "written agreement" or payment of "limited license fees." (*Id.* ¶ 40, Ex. 13 ¶ 6.) By letter dated September 19, 2007 Hanover advised the Church again that Hanover's drawings were copyright protected and urged Defendants to "remind" any architects or engineers that the Church might hire to obtain Hanover's "written permission[]" before construction to "prevent any unnecessary lawsuits of copyright infringement." (*Id.* ¶ 41, Ex. 14.)

From December 2007 to March 2008, Hanover continued to revise the Conversion Project's designs as requested by the Township of Parsippany Building & Construction Office.[2] Copies of these changes were also delivered to the Church. (*Id.* ¶ 42.)

The first revision of the Conversion Project was registered (VA 1-714-623) with the United States Copyright Office as a "2-D artwork, map and/or technical drawing," with an effective date of April 18, 2010. (*Id.* ¶ 49, Ex. 19.)[3] With the assistance of counsel, Hanover also filed a Supplemental Registration, and obtained a Certificate of Registration (VA 1-432-357) with an effective date of June 22, 2010. (*Id.*) The revision was also registered as an "Architectural Work" (VA 1-731-230), with a registration effective date of June 24, 2010. (*Id.* ¶ 60, Ex. 19.) Hanover also registered the second revision of the Conversion Project as a "map

---

[2] Hanover incorporated and delivered the first review of changes on December 26, 2007; the second reviewed changes were incorporated and delivered on March 12, 2008; the third reviewed changes were incorporated and delivered on March 22, 2008. (Am. Compl. ¶ 42-44.)
[3] Plaintiff's Amended Complaint uses inconsistent paragraph numbering. This citation is in reference to paragraph 49 on page 11 of the Amended Complaint.

5

and/or technical drawing" (VA 1-731-235) and as an "Architectural Work" (VA 1-728-653) with effective registration dates of June 24, 2010. (*Id.* ¶ 61, Ex. 20.)

On April 23, 2008, the Church's counsel, Paul E. Rusen ("Rusen"), informed Hanover through a letter that according to the terms of the agreements between the parties, Hanover's obligations had concluded because the Church received the necessary construction permits. (*Id.* ¶ 45, Ex. 15.) The letter also stated that the Church owned the "exclusive right[s]" in the renovations plans "prepared by [Hanover] and the other design professionals," and that it intended to use those plans. (*Id.*) The letter further stated that the Church intended to employ Defendant Peter Raymond Wells, R.A. as its construction administrator based on the recommendation of the general contractor, Defendant Visbeen Construction Co. (*Id.*)

By letter dated June 20, 2008, Rusen informed Hanover that the construction permit issued by the Township of Parsippany was a contingent construction permit that only permitted demolition. (*Id.* ¶ 46, Ex. 16.) Since the Township "refused to issue the balance of the construction permits based upon [Hanover's] design," the Church would not use Hanover's design for the Conversion Project. (*Id.*)

By letter dated July 1, 2008, Rusen further advised that Hanover must "refrain from interfering with Christian Testimony's renovation project."[4] (*Id* ¶ 47, Ex. 17.) Rusen also stated that the Church "decided on its own to redesign the renovation project." (*Id.*)

Hanover claims that the Church built the Conversion Project between March 21, 2008 and September 2009. (*Id*. ¶ 48.) Defendant Visbeen Construction Co. served as the general contractor; Defendant Energy Saving & Electric Corp. completed the design and construction of

---

[4] The Church asked Hanover to refrain from interfering with the Conversion Project because it had learned that Hanover had met with the Township of Parsippany Building & Construction Office. (Am. Compl. ¶ 47, Ex. 17.)

6

the fire alarm system; and Defendant Reiner Group completed the design and construction of the heating, ventilation and air conditioning of the Conversion Project. (*Id.* ¶ 50-52.)

On April 12, 2010, Liou called Chang to inquire as to the permit process for the Conversion Project. (*Id.* ¶ 53.) Liou alleges that during their conversation, Chang informed Liou that the Church did not redesign the Conversion Project. (*Id.*) Liou later viewed microfiche of the Conversion Project available at the Township of Parsippany Building & Construction Office on April 15, and confirmed that the designs used were substantially similar to Hanover's designs for the Conversion Project. (*Id.* ¶ 54.)

From June 2010 through August 2010, Hanover made several attempts to contact the Church and begin mediation to resolve the alleged copyright infringement. (*Id.* ¶ 55.) On August 2, 2010, Hanover filed a mediation case with the American Arbitration Association ("AAA"). First, on August 4th, an AAA case manager circulated a list of potential mediators with a deadline to respond of August 9th; however, the Church failed to meet the deadline. (*Id.* ¶ 56.) The case manager then extended the deadline to August 13th. (*Id.*) On August 12, the Church requested a new list of mediators, which the case manager provided with a new deadline of August 24th. (Id. ¶ 57.) The Church again failed to meet the deadline set by the case manager, and on August 25, 2010 the case manager closed the case, (*Id.*), at which point Hanover decided to bring suit to resolve the matter.

III. **LEGAL STANDARD**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir.

2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556–57, 570) (internal citations omitted).

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to demonstrate "that the pleader is entitled to relief" as required by Federal Rule of Civil Procedure 8(a)(2). *Id*. Further, "[a] court may dismiss a complaint for failure to state a claim, based on a time-bar, where 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Bieregu v. Ashcroft*, 259 F. Supp. 2d 342, 355 n.11 (D.N.J. 2003) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

IV. **DISCUSSION**

Defendants argue that Plaintiff's first amended complaint should be dismissed because: (1) the complaint fails to allege infringement of protectable expression, (2) the church has an implied license to use the drawings, (3) the church did not violate the Digital Millennium Copyright Act, (4) the complaint fails to allege fraud or conspiracy, (5) the complaint fails to allege claims against individual defendants, (6) the complaint fails to allege claims for secondary liability, and (7) because Hanover's unfair competition claim is misplaced. This opinion will address each argument separately.

    *a. Copyright Infringement*

To prevail on a claim of copyright infringement, one must prove (1) "ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns., Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 361 (1991). In order to sufficiently plead a claim for copyright infringement pursuant to Rule 8 of the Federal Rules of Civil Procedure, a claimant must state (1) "which specific original work is the subject of the copyright claim," (2) "that plaintiff owns the copyright," (3) "that the work in question has been registered in compliance with the statute," and (4) "by what acts and during what time defendant has infringed the copyright." *Gee v. CBS*, 471 F. Supp. 600, 643 (E.D. Pa. 1979), *aff'd*, 612 F.3d 572 (3d Cir. 1979) (pre-*Twombly* decision). *Accord Nourison Indus., Inc. v. Virtual Studios, Inc.*, No. 09-5746, 2010 WL 2483422 at *3 (D.N.J. June 3, 2010) (post-*Twombly* decision).

Defendants argue that Hanover's copyright infringement claim is deficient because it fails to allege infringement of protectable expression. However, Defendants' argument is extraneous because Hanover's complaint complies with the elements enumerated in *Gee*. Pursuant to *Gee*, Hanover has pled sufficiently to satisfy the requirements of Rule 8. Hanover

has identified that its designs and revised designs for the Conversion Project are at issue. Hanover has also established that it owns the copyrights to the designs and that the designs have been registered. Further, Hanover alleges in its amended complaint that the Church committed copyright infringement by first copying the master plan Hanover retrieved from the Township of Parsippany Building & Construction Office and then by building the Conversion Project. Last, Hanover alleges that the infringement occurred during the course of building the Conversion Project. (*See* Pl.'s Br. 16.)

### b. *Implied Nonexclusive License*

"Under the Copyright Act, the owner of a copyright has the exclusive right to copy, distribute or display his work"; however, the owner can transfer ownership by selling it or exclusively licensing it. *MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 778–79 (3d Cir. 1991) (citing 17 U.S.C. §§ 101, 204, 106). "Exclusive licenses must [] be in writing." *Id.* A license to a copyright can also be implied and nonexclusive. An implied nonexclusive license, unlike an exclusive license, does not have to be in writing as it is not a transfer of ownership. *See id.* Rather, an implied nonexclusive license is a grant of permission by a copyright owner for the use of a copyright work for a particular purpose. *See I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996). An implied nonexclusive license "can [also] be given orally or [can be] implied from conduct." *Id.* at 776 n.9. An implied nonexclusive license to use copyright materials occurs when: "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Id.* (citing *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558–59 (9th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). *Effects* suggests several objective factors to guide judicial analyses in

determining the existence of an implied nonexclusive license: (1) the language of the copyright registration certificate, (2) the letter agreement, (3) deposition testimony, and (4) the delivery of the copyrighted material without warning that its further use would constitute copyright infringement. *See Effects*, 908 F.2d at 559 n.6.

Here, before considering the *Effects* factors, it is evident from Hanover's factual pleadings that the Church did not have an implied nonexclusive license. It is undisputed that the Church requested the designs from Hanover and that Hanover created the works and delivered them to the Church. As for Hanover's intent regarding the Church's use for the designs, Hanover alleges that in a letter to Chang dated September 5, 2007, Hanover stated in part that its designs were copyright protected and could not be used or modified without permission and payment of a licensing fee. Furthermore, in a letter dated September 19, 2007, Hanover reminded the Church that, in order to prevent an unnecessary copyright infringement lawsuit, architects or engineers hired by the Church would need written permission from Hanover before beginning construction of the Conversion Project. This letter demonstrates that Hanover did not intend the Church to copy or distribute its designs.

Additionally, consideration of the *Effects* factors show that the Church did not have an implied nonexclusive license. Only factors one, two, and four are relevant here. Regarding factor one, the language from Hanover's copyright registration certificate states that the work was proposed for the reconstruction project of the Church. Factor one is neutral as it can be viewed as either too vague to determine an intent to grant an implied nonexclusive license, or as portraying an intent to grant one. Regarding factor two, the agreements entered into between Hanover and the Church were for the purpose of the Church obtaining a variance and complying

11

with building codes during the application process to receive a permit. (Pl.'s Br. 4-6.)[5] Therefore, factor two weighs against a finding of an implied nonexclusive license. Regarding factor four, Hanover sent a letter to James Chang and the Church, alerting them that they could not use Hanover's designs without authorization. While both letters were sent after the Church informed Hanover that it was no longer going to be retained to administer the building of the Conversion Project, the timing of Hanover's letters does not negate Hanover's expression of its intent that its designs not be distributed or copied by the Church. Factor four also weighs against a finding of an implied nonexclusive license. Therefore, it is evident from the pleadings that the church did not have an implied nonexclusive license.

    *c.   The Digital Millennium Copyright Act*

Section 1202(b) of the Digital Millennium Copyright Act makes it unlawful for anyone "without the authority of the copyright owner or the law" to

> (1) intentionally remove or alter any copyright management information, (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law . . . .

17 U.S.C.A. § 1202 (2011). Congress defined "copyright management information" ("CMI") as "any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form . . . ." *Id.*

Hanover alleges in its third and fourth causes of action that the Church intentionally removed or altered the CMI knowing or having reasonable grounds to know, that it would induce, enable, facilitate, or conceal copyright infringement. The Church seeks to dismiss the

---

[5] This is further supported by the fact that the Church sent Hanover a letter on April 23, 2008 stating that pursuant to the terms of the agreements between the parties, Hanover's obligations had ended since the Township of Parsippany Building & Construction Office had issued the construction permits.

claims by arguing that Hanover's designs did not contain CMI and because Hanover did not allege that Defendants engaged in violating conduct.

Regarding CMI, Defendants argue that Hanover's designs did not contain CMI based on the definition used in *Murphy v. Millennium Radio Group LLC*, No. 08-1743, 2010 WL 1372408 (D.N.J. Mar. 31, 2010), which stated that "'[t]o come within § 1202, the information removed must function as a component of an automated copyright protection or management system[,]' [which] . . . are 'technological measures that can control access and reproduction of works, and thereby manage the rights of copyright owners and users.'" 2010 WL 1372408, at *3 (citing *IQ Grp., Ltd. v. Wisener Publ'g, LLC*, 409 F. Supp. 2d 587 (D.N.J. 2006)).  This definition of CMI relies on the legislative history of the DCMA.  As Hanover notes in its brief, the Third Circuit has held that "where [Congress's] will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive[,]" thereby foregoing the need to turn to legislative history. *United States v. One "Piper" Aztec "F" De Luxe Model 250 PA 23 Aircraft Bearing Serial No. 27-7654057*, 321 F.3d 355, 359 (3d Cir. 2003) (quoting *Negonsott v. Samuels*, 507 U.S. 99, 104 (1993)); *see also Morgan v. Gay*, 466 F.3d 276 (3d Cir. 2006). Furthermore, the Third Circuit has recently held in *Murphy v. Millennium Radio Group LLC, et al.*, that the definition of CMI is

> not restricted to the context of 'automated copyright protection or management systems.' Rather, a cause of action under § 1202 of the DMCA potentially lies whenever the types of information listed in § 1202(c)(1)–(8) and 'conveyed in connection with copies ... of a work ... including in digital form' is falsified or removed, regardless of the form in which that information is conveyed.

650 F.3d 295, 305 (3d Cir. 2011).  Accordingly, we find unpersuasive Defendants' argument that the DCMA does not apply to Hanover's claim.

Defendants also argue that Hanover fails to allege that Defendants engaged in the digital transmission of any copyrights; however, Hanover does allege distribution of copyrights by the

Church's conduct in building the Conversion Project. Therefore, Defendants' request to dismiss Hanover's DCMA claims is denied.

        d.    *Fraud*

Federal Rule of Procedure 9(b) requires that fraud be pled with particularity. *See* FED. R. CIV. P. 9. "The [] elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). Defendants argue that Hanover does not sufficiently plead a claim for fraud in Count seven of the amended complaint. (*See* Defs.' Br. 16.) Specifically, Defendants argue that the statement on which Hanover allegedly relied is not an actionable statement. Hanover alleges that between March 13, 2005 and September 20, 2005, James Chang informed Hanover on multiple occasions that the Church planned to retain Hanover to administer the building of the Conversion Project, subject to the successful outcome of the variance application. (Pl.'s Br. 28) (citing Am. Compl. ¶ 31.) Hanover fails to satisfy the first element of pleading a fraud claim, namely that there was a material misrepresentation of a *presently existing* or *past* fact. *See Gennari*, 148 N.J. at 610. Therefore, Defendants' request to dismiss Hanover's fraud claim is granted.

        e.    *Negligent Misrepresentation*

A party stating a claim for negligent misrepresentation must establish that an incorrect statement was negligently made and was justifiably relied upon to be the "basis for recovery of damages for economic loss . . . sustained as a consequence of that reliance." *H. Rosenblum, Inc. v. Adler*, 461 A.2d 138, 143 (N.J. 1983). Regarding Hanover's negligent misrepresentation claim, Defendants argue that Hanover fails to identify any false information provided by the

Church. However, Hanover alleges in its amended complaint that James Chang negligently misled Hanover to believe that Hanover would administer the building of the Conversion Project. (*See* Pl.'s Br. 29.) Hanover further alleges that it justifiably relied upon that information in agreeing to enter into a second and third agreement with the Church at prices below fair market value. (*See id.*) Therefore, Hanover has sufficiently pled its claim for negligent misrepresentation.

### f. Conspiracy

In the State of New Jersey, a civil conspiracy is defined as

> [A] combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.

*G.D. v. Kenny*, 984 A.2d 921, 934 (N.J. App. Div. 2009) (citation and internal quotation marks omitted). "To establish a conspiracy, the plaintiff must demonstrate that there was one plan and that its essential scope and nature was known to each person who is charged with responsibility for its consequences." *Weil v. Express Container Corp.*, 824 A.2d 174, 183 (N.J. App. Div. 2003). A plaintiff does not have to prove that the unlawful agreement was express, as long as the plaintiff alleges that each participant shared in "the general conspiratorial objective." *Morgan v. Union Cnty. Bd. of Chosen Freeholders*, 633 A.2d 985, 998–99 (N.J. App. Div. 1993) (citation and internal quotation marks omitted). Also, the plaintiff does not have to provide direct evidence of the conspirators' agreement; it is sufficient that the agreement could be circumstantially inferred from the fact that the conspirators had reached an understanding. *See id.* at 998. "The actionable element is the tort which the defendants agreed to perpetrate and which they actually committed." *See Landriani v. Lake Mohawk Country Club*, 97 A.2d 511, 511 (N.J. App. Div. 1953). Accordingly, "the conspiracy is not the gravamen of the charge, but

15

merely a matter of aggravation, enabling the plaintiff to recover against all the defendants as joint tortfeasors." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496–97 (D.N.J. 1998) (applying New Jersey law) (citation and internal quotation marks omitted). Defendants argue that Hanover's conspiracy claim should be dismissed because Hanover failed to identify any participants who engaged in the alleged conduct or any of their specific acts.

Here, Hanover has sufficiently pled its copyright infringement claim and DCMA claim. Hanover alleges that Defendants either, individually, as a pair, or a combination of them, entered into an agreement with the intent to induce, enable, facilitate, or commit the underlying unlawful acts. (*See* Am. Compl. ¶¶ 98, 130, 153, 176.) Therefore, it follows that Hanover has sufficiently pled its conspiracy claim.

### g. *Claims Against Individual Defendants*

"A plaintiff alleges a claim for vicarious copyright infringement when he alleges that the defendant 'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'" *Parker v. Google, Inc.*, 242 F. App'x 833, 837 (3d Cir. 2007) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc*., 443 F.2d 1159, 1162 (2d Cir. 1971)). "Any person who has the ability to supervise the [alleged] infringing activity and has an obvious and direct financial interest in that activity or who has personally participated in that activity can be held personally liable for the infringement." *Major League Baseball Promotion Corp. v. Colour-Tex, Inc.*, 729 F. Supp. 1035, 1043 (D.N.J. 1990). "Corporate officers and principal shareholders can be held personally liable for infringement and unfair competition claims." *Id.* Defendants argue that Hanover's claims against individual defendants should be dismissed because the complaint identifies no conduct by any of the four named individual defendants other than their affiliation with the corporate defendants. (*See* Defs.'

Reply Br. 13.) Defendants' argument is misplaced as it does not address the pleading requirement enumerated by *Parker*.

Hanover has pled that Kenneth J. Visbeen, Peter Raymond Wells, and Jinfar Liu controlled the day-to-day operations of their companies and that they were actively involved in the unlawful acts underlying this suit. (*See* Am. Compl. ¶¶ 9–10, 12–13, 17–18.) The complaint further alleges that these individuals had (1) the right and ability to supervise or control the infringing activity, and (2) a direct financial benefit from that activity. (*See id.* ¶¶ 82-96, 114-128.) Accordingly, Hanover has sufficiently pled its claim against the individual defendants.

   *h. Secondary Liability*

"To allege a claim of contributory copyright infringement, [i.e. secondary liability] a plaintiff must allege: (1) direct copyright infringement of a third-party; (2) knowledge by the defendant that the third-party was directly infringing; and (3) material contribution to the infringement." *Parker*, 242 F. App'x at 837. Defendants argue that Hanover fails to provide any factual bases upon which this Court could conclude that the individual defendants were secondarily liable, (*see* Defs.' Br. 18.); however, Hanover has complied with the pleading requirements enumerated in *Parker*. First, Hanover alleges copyright infringement. Second, Hanover alleges in its complaint that the individual defendants knew that the Church was directly infringing on Hanover's copyrights by building the Conversion Project. (*See* Am. Compl. ¶ 79.) Last, Hanover alleges that the individual defendants "knowingly took steps to build the Conversion Project, the allegedly infringing conduct, which was substantially certain to result in the direct infringement of Hanover's copyrights." (*See id.* ¶¶ 80, 112.) Defendants' argument therefore fails.

> *i. Unfair Competition*

Because Hanover agrees to dismiss the unfair competition claim, this Court need not reach this issue.

**CONCLUSION**

For the reasons stated above, this Court **DENIES** Defendant's Motion to Dismiss in part and **GRANTS** it in part.

s/Susan D. Wigenton, U.S.D.J.

Orig:	Clerk
Cc:	Madeline Cox Arleo, U.S.M.J.
	Parties