**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HANOVER ARCHITECTURE SERVICE, P.A., <br><br>                    Plaintiff, <br><br> v. <br><br><br> CHRISTIAN TESTIMONY-MORRIS, N.P., et al., <br><br>                    Defendants. | Civ. No. 10-5455 (KM) <br><br><br><br> **O P I N I O N** |

*Appearances by:*

MARSHALL, DENNEHEY, WARNER, COLEMAN, & GOGGIN
By:    John G. O'Brien, Esq.
       Wendy H. Smith, Esq.
425 Eagle Rock Avenue, Suite 302
Roseland, New Jersey 07068

    *Attorneys for Plaintiff*

FOLEY & LARDNER LLP
By:    Jonathan E. Moskin, Esq.
       Anne B. Sekel, Esq.
       Alicia Pitts, Esq.
90 Park Avenue
New York, New York 10016

    *Attorneys for Defendants*

**DEBEVOISE, Senior District Judge**

This matter arises out of a breakdown in the business relationship between Plaintiff Hanover Architecture Service, P.A. ("Hanover") and Defendant Christian Testimony-Morris, N.P. ("Christian Testimony"), where Hanover was providing architectural design services to Christian Testimony for the purposes of obtaining a variance and construction permit from the Township of Parsippany Building & Construction Office ("the Township") to construct a new church facility ("the Conversion Project"). On October 21, 2010, Hanover filed a Complaint against Defendants Christian Testimony; Visbeen Construction Co. D.P.; Peter Raymond Wells, Architect, LLC; Reiner Group, Inc.; Energy Saving and Electrical Corp., Inc.; James Chang; Kenneth Visbeen; Peter Raymond Wells; and Jinfar Liu, setting forth causes of action for copyright infringement and conspiracy to commit copyright infringement under 17 U.S.C. § 101 et seq.; removal/alternation of copyright management information and conspiracy to commit removal/alteration of copyright management information under 17 U.S.C. § 1202(b) et seq.; providing false copyright management information and conspiracy to provide false copyright management information under 17 U.S.C. § 1202(a) et seq.; fraudulent inducement of contractual relations; negligent misrepresentation; and unfair competition under N.J.S.A. 46:1-4. The Complaint seeks declaratory judgment, an accounting of profits, injunctive relief, statutory damages, actual damages, compensatory damages, punitive damages, treble damages, interest, costs, and attorneys' fees.

On January 18, 2011, Defendants moved to dismiss the Complaint. Hanover opposed the motion. On March 28, 2011, Hanover filed an Amended Complaint setting forth the same causes of action as those in the original Complaint. On November 29, 2011, this Court issued an Opinion and Order, on the Amended Complaint, granting Defendants' Motion to Dismiss with respect to Hanover's fraud claim, but denying the motion with respect to Hanover's other claims.

On December 28, 2011, Defendants filed an answer to the Amended Complaint, along with counterclaims for breach of contract, declaratory judgment, and cancellation of certain copyright registrations. On October 3, 2012, Hanover filed a Motion for Summary Judgment on Christian Testimony's counterclaim for breach of contract, which Christian Testimony opposed. On January 24, 2014, this Court issued an Opinion and Order granting Hanover's motion on Christian Testimony's counterclaim for breach of contract, as it relates to Christian Testimony's allegations that Hanover (1) provided designs that required several revisions before meeting the Township's requirements; and (2) misclassified the building to house the Conversion Project and refused to reclassify it. The Court denied the motion in all other respects.

Christian Testimony now moves for reconsideration and/or clarification of the portion of the Court's January 24, 2014 Opinion and Order granting Hanover's Motion for Summary Judgment on Christian Testimony's counterclaim for breach of contract, as it relates to Christian Testimony's allegations that Hanover (1) provided designs that required several revisions before meeting the Township's requirements; and (2) misclassified the building to house the Conversion Project and refused to reclassify it. For the reasons set forth below, that motion is GRANTED.

## I. BACKGROUND

The facts of this case are fully set fort in <u>Hanover Architecture Service, P.A. v. Christian Testimony-Morris, N.P.</u>, 2014 WL 282698 (D.N.J. Jan. 24, 2014). Thus, for the sake of brevity, the Court will repeat only those facts that are material to the instant motion.

Hanover is an architectural firm led by Chiming Liou. Christian Testimony is a born-again Christian church. In January 2005, James Chang, the president of Christian-Testimony, contacted Hanover to evaluate whether a certain warehouse in Boonton, New Jersey, could house the Conversion Project. On March 13, 2005, after multiple telephone and in-person

conversations, Hanover and Christian-Testimony entered into an agreement ("the First Agreement") under which Hanover would provide a review of the existing building plans and architectural design services of the warehouse for the purpose of obtaining a variance from the Township.

On September 20, 2005, the parties entered into a second agreement, under which Hanover agreed to provide architectural drawings for the Conversion Project that complied with building code requirements ("the Second Agreement"). On October 19, 2006, after the Township granted a variance to Christian Testimony, Hanover and Christian Testimony entered into a third agreement, under which Hanover would provide additional architectural drawings meeting building code requirements during the permit application process ("the Third Agreement"). Christian Testimony claims that Hanover breached the Third Agreement in multiple respects.

Specifically, "Hanover incorrectly classified the building under relevant building codes, thus requiring the addition of a firewall that was not included in the plans as originally prepared by Hanover and which would have required substantial additional cost to Christian Testimony." (Answer and Counterclaims ¶ 286a.) Moreover, when Christian Testimony discovered that "no firewall should have been required, Hanover refused to cooperate with the [Township] . . . to correct its own mistake and insisted instead to Christian Testimony that it needed to build the firewall, as a result of which progress on the project was delayed for many months and at considerable additional cost." (Id.) In addition, "Hanover was required to revise the plans three times, because it failed to meet the requirements of the Township, as a result of which, progress on the project was delayed for many months and at considerable additional cost." (Id. ¶ 286b.)

Christian Testimony maintains that Hanover's refusal to modify the designs for the Conversion Project amounts to a breach of contract, and, as a result, Christian Testimony had to "hire a second architect to create new drawings to reduce the projected construction costs by more than $1.0 million (from $3.5 to $2.4 million), which was still well in excess of the originally agreed budget and required Christian Testimony to obtain substantial additional mortgage financing." (Id. ¶ 297.) In addition, the Conversion Project was "needlessly delayed, and Christian Testimony was required to lease alternative space at a cost of more than $135,000." (Id. ¶ 298.)

On December 26, 2007, Hanover delivered a copy of its designs of the Conversion Project to Christian Testimony. These copies incorporated changes requested by the Township during its first-level review. On March 12, 2008, Hanover provided a copy of its designs of the Conversion Project that incorporated changes requested by the Township during its second-level review. On March 22, 2008, Hanover provided a copy of its designs of the Conversion Project that incorporated changes requested by the Township during its third-level review.

On April 23, 2008, Paul E. Rusen, Esq., counsel to Christian Testimony, sent a letter to Hanover stating that the Township issued construction permits for the Conversion Project, on April 21, 2008, and that therefore Hanover's "obligation to render architectural services to Christian Testimony has concluded." (Amend. Compl., Ex. 15.) The letter further states that Christian Testimony intended to (1) employ Peter Raymond Wells as construction administrator; and (2) use the plans prepared by Hanover and other architects, over which Christian Testimony has exclusive rights to use in furtherance of the Conversion Project.

On June 20, 2008, Mr. Rusen sent another letter to Hanover. According to the letter, Christian Testimony had recently learned that the April 21, 2008 construction permit issued by

the Township "was a contingent construction permit which merely permitted demolition of the premises." (Id., Ex. 16.) Moreover, the Township "refused to issue the balance of the construction permits based upon your design. As a result of the Township's decision, Christian Testimony will not use your design for the renovation. Christian Testimony will retain an architect to redesign the renovation project."[1] (Id.)

On July 1, 2008, Mr. Rusen sent a third letter to Hanover. This letter stated that it had come to Christian Testimony's attention that Hanover had recently met with the Township regarding the Conversion Project, and reminded Hanover that (1) it is no longer providing architectural services to Christian Testimony; (2) Hanover is not allowed to discuss with or contact the Township on behalf of Christian Testimony regarding the Conversion Project; and (3) Christian Testimony had decided to terminate Hanover's services, redesign the Conversion Project, and paid Hanover in full for the services that it rendered. (Id., Ex. 17.)

In its prior Motion for Summary Judgment on Christian Testimony's counterclaim for breach of contract, Hanover argued that that claim is, as a matter of law, one for professional malpractice, therefore requiring Christian Testimony to file an affidavit of merit in support thereof. See Hanover, 2014 WL 282698, at *6. And because Christian Testimony failed to do so, its counterclaim for breach of contract merits dismissal. Christian Testimony, on the other hand, argued that no affidavit of merit was required in support of its counterclaim for breach of contract because that claim does not fall within the scope of the Affidavit of Merit Statute.

The Court found that Christian Testimony's counterclaim for breach of contract fell outside the scope of the Affidavit of Merit Statute, except as it relates to Christian Testimony's

---

[1] According to Mr. Chang, the Township failed to issue a full construction permit, in part, because Hanover misclassified the building, thus requiring the Conversion Project to incorporate a fire wall. (Chang Decl. ¶ 17.)

allegations that Hanover (1) provided designs that required several revisions before meeting the Township's requirements; and (2) misclassified the building to house the Conversion Project and refused to reclassify it. In doing so, the Court found that those allegations (1) fell within the scope of the Affidavit of Merit Statute because they strongly implied malpractice considerations, such as deviation from a professional standard of care applicable to architects; and (2) supported Christian Testimony's claim for damages arising out the delay in the Conversion Project, which also fell within the scope of the Affidavit of Merit Statute.

## II.   DISCUSSION

Hanover now moves for reconsideration and/or clarification of the portion of the Court's January 24, 2014 Opinion and Order granting Hanover's Motion for Summary Judgment on Christian Testimony's counterclaim for breach of contract, as it relates to Christian Testimony's allegations that Hanover (1) provided designs that required several revisions before meeting the Township's requirements; and (2) misclassified the building to house the Conversion Project and refused to reclassify it. In doing so, Christian Testimony argues that these two acts of malpractice are not tied to any identified property damage under the Affidavit of Merit Statute.[2]

**A.   Standard of Review**

"[I]t is well-established in this district that a motion for reconsideration is an extremely limited procedural vehicle." Resorts Int'l v. Greate Bay Hotel & Casino, 830 F. Supp. 826, 831 (D.N.J. 1992). As such, a party seeking reconsideration must satisfy a high burden, and must "rely on one of three major grounds: (1) an intervening change in controlling law; (2) the

---

[2] Christian Testimony also argues that Hanover's breach of certain discovery rules merits denial of Hanover's prior Motion for Summary Judgment. The Court need not address these arguments, because it will grant Christian Testimony's Motion for Reconsideration based on the argument that its counterclaim for breach of contract is not tied to any identified property damage.

availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

Since the evidence relied upon in seeking reconsideration must be "newly discovered," a motion for reconsideration may not be premised on legal theories that could have been adjudicated or evidence which was available but not presented prior to the earlier ruling. See id. Local Civil Rule 7.1(i), which governs such motions, provides that they shall be confined to "matter[s] or controlling decisions which the party believes the Judge or Magistrate Judge has 'overlooked.' " The word "overlooked" is the dominant term, meaning that except in cases where there is a need to correct a clear error or manifest injustice, "[o]nly dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration." Resorts Int'l, 830 F. Supp. at 831; see also Egloff v. N.J. Air Nat'l Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988); Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

A decision suffers from "clear error" only if the record cannot support the findings that led to that ruling. United States v. Grape, 549 F.3d 591, 603–04 (3d Cir. 2008) (citations omitted). Thus, a party must do more than allege that portions of a ruling were erroneous in order to obtain reconsideration of that ruling; it must demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in "manifest injustice" if not addressed. See Grape, 549 F.3d at 603–04; N. River Ins., 52 F.3d at 1218. Mere "disagreement with the Court's decision" will not suffice. P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp., 161 F. Supp. 2d 349, 353 (D.N.J. 2001).

B.      **Christian Testimony's Motion for Reconsideration**

> The Affidavit of Merit Statute provides that:
>
> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

N.J.S.A. 2A:53A-27.

A "licensed person" is defined as a licensed accountant, architect, attorney, dentist, engineer, physician, podiatrist, chiropractor, registered nurse or health care facility. N.J.S.A. 2A:53A-26. In general, "failure to provide an affidavit results in dismissal of the complaint." Couri v. Gardner, 173 N.J. 328, 333 (2002). The "overall purpose of the statute is to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation." Id. (quotation omitted).

The New Jersey Supreme Court has held that "[t]here are three elements to consider when analyzing whether the [Affidavit of Merit] statute applies to a particular claim: (1) whether the action is for damages for personal injuries, wrongful death or property damage (nature of injury); (2) whether the action is for malpractice or negligence (cause of action); and (3) whether the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint [ ] fell outside acceptable professional or occupational standards or treatment practices (standard of care)." Id. at 334 (quotations omitted).

In its prior Opinion, the Court noted that "[t]he precise definition of property damage under the Affidavit of Merit Statute is extremely difficult to discern under New Jersey case law."

9

Hanover, 2014 WL 282698, at *7.  The Court stated that, in Cornblatt v. Barow, the New Jersey Appellate Division found that "[p]ersonal property embraces everything that may be tangible or intangible such as a chose in action.  The right or claim to money damages . . . is a property right . . . beyond question."  303 N.J. Super. 81, 86 (App. Div. 1997) (quotation omitted), rev'd on other grounds by Cornblatt v. Barrow, 153 N.J. 218 (1998).

      The Court then examined the New Jersey Supreme Court's ruling, in Couri, that an amount paid under a contract, and "incidental costs incurred . . . are neither damages for personal injuries, wrongful death or property damage" under the Affidavit of Merit Statute.  Id. at 335 (quotation marks omitted).  Finally, the Court referenced the New Jersey Superior Court's decision in Nagim v. New Jersey Transit, which attempted to clarify Couri by distinguishing between claims for "a finite sum of money already paid by the plaintiff to the defendant and for which recompense was sought," which are not encompassed by the Affidavit of Merit Statute, with those for "yet unspecified" costs, which are encompassed by the statute.  369 N.J. Super. 103, 119 (Law Div. 2003)

      Based on this case law, the Court found that "while the definition of damages to personal property contemplated in the Affidavit of Merit Statute remains nebulous, Couri makes clear that amounts paid under a contract, or amounts paid as a result of the breach of the contract, do not fall within the ambit of the statute."  Hanover, 2014 WL 282698, at *8.  The Court therefore concluded that the bulk of damages alleged by Christian Testimony in support of its counterclaim for breach of contract fell outside the scope of the Affidavit of Merit Statute, because they included amounts paid to Hanover under the Second and Third Agreements, and amounts paid as a result of Hanover's breach of those agreements.  Id. at *8-*9.  However, the Court held that the damages sought for delay in the Conversion Project fell within the scope of

the Affidavit of Merit Statute because "the damages for the delay itself are separate and apart from amounts paid arising out of Hanover's breach of the Second and Third Agreements." Id. at *9.  In turn, the Court held that damages for delay in the Conversion Project satisfied the nature of injury element of the Affidavit of Merit Statute.  Id.

The Court also held that Christian Testimony's allegations that Hanover (1) provided designs that required several revisions before meeting the Township's requirements; and (2) misclassified the building to house the Conversion Project and refused to reclassify it, which supported Christian Testimony's claim for damages arising out of the delay in the Conversion Project, were "indicative of malpractice and require proof of a deviation from the professional standard of care applicable to architects." Id. at *10.  Thus, the Court held that those allegations satisfied the second and third elements of the Affidavit of Merit Statute.  Id.

Christian Testimony now seeks reconsideration of the Court's ruling that the damages for delay in the Conversion Project fall within the scope of property damage under the Affidavit of Merit Statute.  In doing so, Christian Testimony argues that there is no indication that the delay in the Conversion Project affected any property interest in the Conversion Project or damaged any aspect of the building itself.  Christian Testimony is correct.

"Misfeasance or negligent affirmative conduct in the performance of a promise generally subjects an actor to tort liability as well as contract liability for physical harm to persons and tangible things." Saltiel v. GSI Consultants Inc., 170 N.J. 297, 310 (2002) (quotation omitted).  However, "[r]ecovery of intangible economic loss is generally determined by contract." Id.

Here, the damages for delay in the Conversion Project amount to intangible economic loss.  Indeed, there is no dispute that there was no physical damage or alteration to the Conversion Project as a result of the delay in its construction.  And while Cornblatt makes clear

11

that personal property need not be tangible, there is no indication whatsoever of any property interest in the delay in the Conversion Project. Thus, damages for the delay in the Conversion Project are not cognizable under the Affidavit of Merit Statute.

Giving further heft to this conclusion is the economic loss doctrine, which "helps to maintain the 'critical' 'distinctions between tort and contract actions' by precluding a party's 'negligence action, in addition to a contract action, unless the plaintiff can establish an independent duty of care.'" SRC Constr. Corp. of Monroe v. Atlantic City Housing Authority, 935 F. Supp. 2d 796, 798 (D.N.J. 2013) (quoting Saltiel v. GSI Consultants Inc., 170 N.J. 297, 310, 314 (2002)). The economic loss doctrine operates to bar tort claims that "simply [seek] to enhance the benefit of the bargain [that was] contracted for." Saltiel, 170 N.J. at 315. Indeed, the "desire to enjoy the benefit of [a] bargain [under a contract] is not an interest that tort law traditionally protects." Id. at 311.

Thus, "[w]hether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties." Arcand v. Brother Intern Corp., 673 F. Supp. 2d 282, 308 (D.N.J. 2009) (citations omitted). Here, Christian Testimony's allegations that Hanover (1) provided designs that required several revisions before meeting the Township's requirements; and (2) misclassified the building to house the Conversion Project and refused to reclassify it, while tortious in nature, are wholly intrinsic to Hanover's performance under the Third Agreement. Indeed, Hanover's duty to (1) provide designs that met the Township's requirements; and (2) correctly classify the building to house the Conversion Project stems directly from Hanover's contractual obligation under the Third Agreement to provide architectural designs to for submission to the Township in furtherance of a construction permit for the Conversion Project.

Thus, Christian Testimony's allegations—that Hanover (1) provided designs that required several revisions before meeting the Township's requirements; and (2) misclassified the building to house the Conversion Project and refused to reclassify it—seek merely to enhance the benefit of Christian Testimony's bargain with Hanover under the Third Agreement, and therefore may only support a claim for breach of contract, not malpractice. As such, they do not, as a matter of law, fall within the scope of the Affidavit of Merit Statute.

### III.  CONCLUSION

For the foregoing reasons, Christian Testimony's Motion for Reconsideration is GRANTED. Christian Testimony's counterclaim for breach of contract may move forward in its entirety.

The Court will enter an order implementing this opinion.

 **/s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: March 6, 2014