UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HANOVER ARCHITECTURAL SERVICE, P.A., <br>        Plaintiff, <br> v. <br><br> CHRISTIAN TESTIMONY-MORRIS, N.P., et al., <br>        Defendants. | Civ. No. 2:10-5455 (KM)(SCM) <br><br> OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

    This matter comes before the Court upon the motion for reconsideration by Defendants Christian Testimony-Morris, N.P., Visbeen Construction Co., D.P.; Peter Raymond Wells, Architect, LLC; Reiner Group, Inc.; Energy Saving and Electrical Corp., Inc.; James Chang; Kenneth Visbeen; Peter Raymond Wells; Jinfar Liu; and John Does 1–10 (collectively "Christian Testimony"[1]) (ECF No. 168). I write this opinion primarily for the parties and will not repeat the analysis in my May 18, 2015 opinion. (*See* Opinion, ECF No. 166; Order, ECF No. 167). That opinion denied two motions for summary judgment by Plaintiff Hanover Architectural Service, P.A. ("Hanover") and denied one motion for partial summary judgment by Christian Testimony. Christian Testimony now moves for reconsideration of its motion for partial summary judgment.

    Christian Testimony's motion is a textbook example of everything a reconsideration motion should not be. I nevertheless discuss its arguments. For the reasons set forth below, the motion is DENIED.

---

[1]   I use "Christian Testimony" as a shorthand for all defendants, who are identified individually as the context requires.

## I. STANDARD

Motions for reconsideration are governed by Local Civil Rule 7.1(i). *See Bowers v. Nat'l Collegiate Athletics Assoc.*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001). That Rule states:

> [A] motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge. A brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked shall be filed with the Notice of Motion.

L. Civ. R. 7.1(i).

A motion for reconsideration is "'an extremely limited procedural vehicle.'" *Tehan v. Disability Mgmt. Servs., Inc.*, 111 F. Supp. 2d 542, 549 (D.N.J. 2000) (quoting *Resorts Int'l, Inc. v. Greate Bay Hotel and Casino, Inc.*, 830 F. Supp. 826, 831 (D.N.J. 1992)). The movant has the burden of demonstrating: (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) granting the motion is necessary to correct a clear error of law or prevent manifest injustice. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *Beety–Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 747 (3d Cir. 2009) (non-precedential). In other words, such a motion may be granted where facts or controlling legal authority were presented to, but not considered by, the court. *Mauro v. N.J. Supreme Ct.*, 238 F. App'x 791, 793 (3d Cir. 2007) (non-precedential).

Reconsideration is not warranted, however, where (1) the movant simply repeats the cases and arguments previously analyzed by the court, *Arista Recs., Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 416 (D.N.J. 2005); *see also Tehan*, 111 F. Supp. 2d at 549 ("Motions for reconsideration will not be granted where a party simply asks the court to analyze the same facts and cases it had already considered . . . ."); or

(2) the movant has filed the motion merely to disagree with or relitigate the court's initial decision, *id.*; *see Morris v. Siemens Components, Inc.*, 938 F. Supp. 277, 278 (D.N.J. 1996) ("A party's mere disagreement with a decision of the district court should be raised in the ordinary appellate process and is inappropriate on a motion for reargument."). The motion is not a vehicle for a litigant to raise new arguments or present evidence that could have been raised prior to the initial judgment. *See Bapu Corp. v. Choice Hotels Int'l, Inc.*, Civ. No. 07-5938, 2010 WL 5418972, at *2 (D.N.J. Dec. 23, 2010) (citing *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001)).

Accordingly, relief pursuant to Rule 7.1 is reserved for those instances where the Court may have "overlooked" pertinent facts or controlling case law. *See* L. Civ. R. 7.1(i). Because the requirements are so stringent, motions for reconsideration typically are not granted; rather, relief is "an extraordinary remedy" to be granted "sparingly." *A.K. Stamping Co., Inc., v. Instrument Specialties Co., Inc.*, 106 F. Supp. 2d 627, 662 (D.N.J. 2000) (quoting *NL Indus., Inc., v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996)).

## II. DISCUSSION[2]

I refer the parties to the statement of facts in my May 18, 2015 Opinion (ECF No. 166). In that Opinion, I denied Christian Testimony's motion for partial summary judgment due to the numerous issues of material fact in this case.

Christian Testimony now makes—reiterates, really—the following arguments: (1) Hanover cannot prove its copyright infringement claims; (2) Christian Testimony is at least a joint owner of the works in question; (3) Christian Testimony has an implied license to use the drawings for which it paid; (4) Christian Testimony has not violated the Digital

---

[2] For ease of reference, attached is a key to the record citation abbreviations used in this opinion and the May 18, 2015 opinion.

3

Millennium Copyright Act, 17 U.S.C. § 1202(a) ("DMCA"); (5) Hanover cannot prove secondary liability, vicarious liability, or conspiracy; (6) Hanover cannot sue individual defendants without piercing the corporate veil; (7) Hanover cannot prove any misrepresentation; and (8) Hanover has not stated any claim for damages.

The argument seems to be that, in my May 18, 2015, opinion, I overlooked every one of those eight arguments. I here address, and once again reject, these arguments. To the limited extent there is anything new, there is no justification for Christian Testimony's having failed to raise it before. The discussion here is supplemental to, and should be read in conjunction with, my earlier opinion.

### a. Hanover's copyright infringement claims

Christian Testimony first argues that Hanover cannot identify anything original in Chiming ("Jimmy") Liou's drawings. (CT 168 Mot. 2–6) Christian Testimony also lists specific design elements that it argues are common, and therefore unoriginal. (*Id.* 3–4) As I have previously stated, a Certificate from the Copyright Office is prima facie evidence of a valid copyright, and therefore of some original element in the copyrighted work. See *Value Grp., Inc. v. Mendham Lake Estates, L.P.*, 800 F. Supp. 1228, 1232 (D.N.J. 1992); *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 667 (3d Cir. 1990) (referring to 17 U.S.C. § 410(c)); *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 290–91 (3d Cir. 1991). And, Hanover's expert, Douglass Asral, Registered Architect, stated in an expert report that "there are certain aspects of Mr. Liou's design that are arbitrary and serve no specific function are uniquely particular to his vision, such as the angled walls in the Lobby, Main Sanctuary and the partially recessed Entrance Doors." (Han. 116 Mot. Ex. 17, ECF No. 121-3, 121-4 ("Asral Report")) Asral's report is evidence that Hanover's drawings may be original, and therefore copyrightable. It would be inappropriate to decide among expert opinions regarding

4

architectural design on a motion for summary judgment.

Christian Testimony also reiterates its argument that because it proposed many of the design elements of Liou's drawings, the drawings were unoriginal. That another person germinated the ideas contained in a work does not preclude a claim of copyright infringement. *See* 17 U.S.C. § 102 ("[i]n no case does copyright protection for an original work of authorship extend to any *idea*, procedure, process, system, method of operation, concept, principle, or discovery." (emphasis added)); *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) ("As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection.") Thus, even if Christian Testimony proposed the ideas underlying Liou's designs, the designs would belong to Liou if he translated those ideas into tangible designs.

### b. Christian Testimony's claim of joint ownership in the works in question

Christian Testimony next argues that if there is anything original in Liou's drawings, it is a co-owner, as it contributed to Liou's design effort. (CT 168 Mot. 7–8) Christian Testimony argues that this conclusion is compelled by *Brownstein v. Lindsay*, 742 F.3d 55, 64 (3d Cir. 2014). The Copyright Act of 1976 defines a joint work as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. Under 17 U.S.C. § 410, the certificate of registration "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." Because the copyright certificates in this case do not name Christian Testimony as a sole or joint owner, Christian Testimony must offer evidence to rebut this prima facie evidence.

"For two or more people to become co-authors, each author must contribute some non-trivial amount of creative, original, or intellectual

expression to the work and both must intend that their contributions be combined." *Brownstein v. Lindsay*, 742 F.3d 55, 64 (3d Cir. 2014). Christian Testimony has not offered any evidence of the parties' intent to embark on a joint design effort. The record indicates that Hanover drafted the designs with input from Christian Testimony—not that the parties drafted the designs together. Therefore, the argument of joint ownership is unpersuasive.

More importantly, as I noted in my previous opinion, the degree of similarity between the drawings in this case and the extent of any copying remain issues of fact. Those issues bar summary judgment as to the joint ownership claim.

### c. Christian Testimony's claim of an implied license to use the drawings for which it paid

Christian Testimony next argues that it has an implied license to use Liou's drawings because it paid for them. (CT 168 Mot. 7–8) However, as I have previously found, the *scope* of any implied license is clearly in dispute. *See MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 779 (3d Cir. 1991) (Even where a license is found, "the licensor can still bring suit for copyright infringement if the licensee's use goes beyond the scope of the nonexclusive license.) Of course, Liou's designs were meant to be used, and not simply as wall decorations. But, it is not clear that Hanover would have approved the *alteration* of its designs or the use of its designs by others in the event Hanover was not retained as construction administrator.[3] These material issues of fact as to the license issue preclude summary judgment.

---

[3]  As I have previously written, there is evidence that Hanover refused to modify its designs when asked to do so by Christian Testimony because Liou didn't want a modified design to "bear [his] name and damage [his] reputation of creativity." (Chang Decl. Ex. 14.) Moreover, Christian Testimony's own position is that Hanover refused to perform its duties unless it was appointed construction administrator for the project, citing a letter from Liou on September 19, 2007. (CT 124 Stmt. ¶79 (citing Chang Decl. ¶73, Ex. 14.) In the

### d. Christian Testimony's assertion that is has not violated the DMCA

Christian Testimony argues that Hanover cannot prove it violated the Digital Millennium Copyright Act, 17 U.S.C. § 1202(a) ("DMCA"). (CT 168 Mot. 10–12) Christian Testimony cites to testimony by its second hired architect, Raymond Wells, who indicated that he created new drawings rather than copying or removing copyright information from Liou's drawings. Still at issue, however is the extent to which Wells's drawings were similar to or copied from Liou's drawings.[4] If it is proven that Wells copied Liou's drawings, intent to do so may be inferred from the circumstances. Christian Testimony's arguments that Wells was required to create a new set of drawings and did so are therefore unavailing. Its reliance on the format in which Liou's and Wells's drawings were completed is also misplaced, as this evidence does not show it was impossible to copy Liou's drawings.[5]

---

same September 19, 2007 letter, Hanover informs Christian Testimony that its designs are protected by copyright law and that Christian Testimony must obtain Hanover's written permission before using the drawings. (Chang Decl. Ex. 14.) In a previous September 5, 2007 letter, Liou also warned that his designs were copyrighted and could not be used without written permission, and wrote that he was concerned that, if Hanover was not involved with construction administration, Christian Testimony "may expose my firm and myself to certain risks during and/or after construction." (Amended Complaint Ex. 13, ECF No. 22-1.) These letters suggest Hanover may have intended to grant an implied license only if it was appointed construction administrator, as expected.

[4]     Evidence pertaining to this issue includes a letter dated April 23, 2008, from Christian Testimony's counsel, Paul E. Rusen, informing Hanover that Christian Testimony had the exclusive rights to use Hanover's design plans, that Christian Testimony intended to use the design plans, and that Wells was appointed as construction administrator. (Han. 116 Stmt. ¶32 (citing Han. 116 Mot. Ex. 10, ECF No. 122-1)) Also relevant is the report of Hanover's expert, Douglass Asral, indicating that Wells's drawings are substantially similar to Liou's drawings. (Han. 116 Mot. Ex. 17, ECF No. 121-3, 121-4 ("Asral Report"))

[5]     Christian Testimony has argued that Liou's drawings could not have been copied because they were submitted in read-only pdf format. (CT 124 Stmt. ¶99 (citing Wells Decl. ¶7)) It has also argued that the AutoCAD software

7

### e. Hanover's secondary liability, vicarious liability, and conspiracy claims

As to secondary or vicarious liability, Christian Testimony argues that Hanover has not sufficiently alleged a separate financial benefit as to each defendant it accuses of secondary liability. (CT 168 Mot. 12–14) Specifically, Christian Testimony asserts that because the parties it hired (the other defendants) were paid on an hourly basis, they would have received the same compensation, regardless of any alleged copyright infringement. Christian Testimony cites to *Artists Music, Inc. v. Reed Pub. (USA), Inc.*, in which a landlord was not liable for a tenant's infringing activity because the rent was not "tied to the tenant's revenues or profits derived from the alleged copyright infringements." No. 73163, 1994 WL 191643 (S.D.N.Y. May 17, 1994). It also cites to *Deutsch v. Arnold*, in which a landlord was not liable for a tenant's infringing activity as there was "no proof of any acts of [the landlord's] infringement," the landlord was not a partner in the tenant's activity, the landlord received nothing from the infringing activity, and there was no proof the landlord knew of the activity. 98 F.2d 686, 688 (2d Cir. 1938).

However, the defendants in this case were not so far removed from the alleged infringing activity.[6] They each had a financial stake in the project being completed, and they each participated in its completion.

---

used by Wells "requires a draftsperson to draw each and every line and detail." (CT 168 Mot. 11)

[6] All defendants were involved with the design of the Conversion Project or the construction of the project based on the designs. (CT 124 Stmt. ¶¶5–8.) Visbeen, Wells, the Reiner Group, and Liu each supervised their portions of the design or construction. Visbeen of Visbeen Construction was responsible for at least a portion of the permits application process, communicated with Christian Testimony about modifications to Hanover's designs, and participated in meetings with Hanover and the Parsippany Building Department. (Supp. Liou Decl. ¶25; CT 124 Stmt. 25; Chang Decl. ¶28; Visbeen Decl. ¶4.) Wells of Wells Architect drafted the final design plans used by Christian Testimony. Liu of ESEC designed the fire alarm system. (CT 124 Stmt. 8; 2d Am. Liou Dec. ¶40.) Reiner Group designed the heating, ventilation, and air conditioning system. (CT 124 Stmt. ¶7.)

Christian Testimony's arguments regarding vicarious and secondary liability are therefore unavailing.

Christian Testimony's arguments regarding Hanover's conspiracy claims fail for the same reason. Christian Testimony argues that Hanover does not allege specific facts that individual defendants allegedly did in furtherance of any conspiracy. (CT 168 Mot. 15–17) A conspiracy, however, may be inferred from circumstantial evidence. *See, e.g., Morgan v. Union Cnty. Bd. of Chosen Freeholders*, 633 A.2d 985, 998 (N.J. Super. Ct. App. Div. 1993) (internal quotation and citation omitted) ("It is well known that the nature of a conspiracy is such that more often than not the only type of evidence available is circumstantial in nature."). Hanover has presented some evidence of copyright infringement, and Christian Testimony admittedly hired the other defendants to complete its construction project. (CT 124 Stmt. ¶¶5–8.) As I have already explained, it is reasonable to infer that if Christian Testimony infringed on Hanover's copyrights, the parties involved in the construction project would have known that. *See Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (internal quotation and citation omitted) ("It is enough [for liability] if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them."). There is an issue of fact.

### f. Hanover's claims against individual defendants

Christian Testimony argues that suing the individuals in addition to the corporate entities in this case requires piercing the corporate veil. (CT 168 Mot. 18–19) That is incorrect. Hanover does not attempt to sue the individuals in their capacities as corporate officers, but rather as individual actors. The corporate structure does not shield individuals from their own torts. *See Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978) ("A corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when

9

he is an actual participant in the tort. . . . The fact that an officer is acting for a corporation also may make the corporation vicariously or secondarily liable under the doctrine of respondeat superior; it does not however relieve the individual of his responsibility.").[7]

### g. Hanover's negligent misrepresentation claims

Christian Testimony argues that Hanover cannot prove negligent misrepresentation, as there is no evidence of an agreement to appoint Hanover as the construction administrator. (CT 168 Mot. 17–18)

Hanover accuses Chang of negligently misleading Hanover into thinking Hanover would be administering the construction project. (Han. 116 Mot. 24–25.) In his declaration, Liou says he relied on the false representation that Hanover would be appointed construction administrator and therefore agreed to provide services to Christian Testimony under the Second and Third Agreements at below the fair market price. Liou says he expected to "recoup" his "investment" in the project by administering the construction of it. Christian Testimony, however, did not retain Hanover as construction administrator, causing economic loss to Hanover. (2d Am. Liou Decl. ¶¶16, 18, 20, 22.) Thus, there is a dispute as to whether false representations were made and whether Hanover relied on them to its detriment.

---

[7]  The Third Circuit explained the distinction between individual tort liability and liability resulting from piercing the corporate veil thus:

> "[Individual tort] liability is distinct from the liability resulting from the 'piercing of the corporate veil' as that term is commonly used. The effect of piercing a corporate veil is to hold the owner liable. The rationale for piercing the corporate veil is that the corporation is something less than a bona fide independent entity. [Individual defendant] is liable here as an actor rather than as an owner. His liability is in no way dependent on a finding that [the corporation] is inadequately capitalized, that the corporation is a mere alter ego of [the individual defendant], that the corporate form is being used to perpetrate a fraud, or that corporate formalities have not been properly complied with.

*Donsco, Inc.*, 587 F.2d at 606.

### h. Hanover's claims for damages

Christian Testimony argues that Hanover has either waived or failed to state a claim for damages. (CT 168 Mot. 14–15) Specifically, Christian Testimony once again questions Hanover's right to sue given that the copyright registrations at issue were originally in Liou's name, rather than Hanover's. As I have already explained, "an otherwise valid registration is not jeopardized by inadvertent, immaterial errors in an application." *Gallup, Inc. v. Kenexa Corp.*, 149 F. App'x 94, 96 (3d Cir. 2005) (citing *Raquel v. Educ. Mgmt. Corp.*, 196 F.3d 171, 177 (3d Cir. 1999), *cert. granted and judgment vacated on other grounds*, 531 U.S. 952 (2000)).

This case is similar to *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146 (9th Cir. 2010). There, an adult movie actor, who was also the president and sole shareholder of the company creating the videos in which he appeared, mistakenly listed his own name, rather than the company's name on the copyright registration forms for the videos. The Ninth Circuit found that the company was a "one man shop" consisting only of the actor, and that the actor had made a mistake in listing himself as the author on the copyright registration forms. *Id.* at 1156. The Court ruled that "that mistake does not constitute a basis to invalidate the copyright . . . [because] [i]nadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless . . . the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement." *Id.* (internal quotations and citations omitted). *See also Gallup, Inc. v. Kenexa Corp.*, 149 F. App'x 94, 96 (3d Cir. 2005) ("A misstatement is material if it might have influenced the Copyright Office's decision to issue the registration. . . . [A] misrepresentation is likely to affect the Register's decision only if it concerns the copyrightability of the work.") (internal quotations and

11

citations omitted).

Liou is the President of Hanover and appears to be the sole architect working for Hanover. (*See* 2d Am Liou Decl. Introduction.) No other employee of Hanover has been mentioned in any of the parties' filings. There is no dispute between Liou and Hanover as to who owns the copyrights. There is nothing indicating that Liou intended to defraud the Copyright Office by listing his own name on the original registration rather than listing Hanover. Based on the current record, there is at least an issue of fact as to whether Hanover could be awarded damages, if successful, based on the copyright registrations at issue.

Christian Testimony also argues that Hanover has failed to offer proof of actual damages, particularly in regard to its state law claims. That is an overstatement. As an example, I refer the parties to Hanover's negligent misrepresentation claim, in which Hanover accuses Christian Testimony of falsely representing to Hanover that it would be hired as the construction administrator for the project. Liou has stated that, as a result of his reliance on this representation, he charged Christian Testimony a price that was below the fair market rate for his services. (2d Am. Liou Decl. ¶¶16, 18, 20, 22) Thus, Hanover has not waived or failed to state a claim for damages. The amount of damages, if any, remains to be seen.

### III. CONCLUSION

Christian Testimony has not carried its burden under L. Civ. R. 7.1(i) of demonstrating an intervening change in the controlling law, presenting previously unavailable evidence, or showing a clear error of law or manifest injustice. Material issues of triable fact remain, precluding summary judgment. Accordingly, Christian Testimony's motion for reconsideration (ECF No. 168) is DENIED.

Dated: July 21, 2015

Hon. Kevin McNulty
United States District Judge

**ADDENDUM: CITATIONS**

***Rule 56.1 Statements:*[8]**

For Hanover's first motion for partial summary judgment (ECF No. 101):
    Hanover's Statement (ECF No. 115): **Han. 101 Stmt.**
    Christian Testimony's Response (ECF No. 147-1): **CT 101 Resp.**

For Hanover's second motion for summary judgment (ECF No. 116):
    Hanover's (Second Amended) Statement (ECF No. 141): **Han. 116 Stmt.**
    Christian Testimony's Response (ECF No. 146-1): **CT 116 Resp.**
    Christian Testimony's Counter-Statement (ECF No. 146-2): **CT 116 Counter.**
    Hanover's Responses to Counter-Statement (ECF Nos. 157-1, 158): **Han. 116 Resp.**

For Christian Testimony's motion for summary judgment (ECF No. 124):
    Christian Testimony's Statement (ECF No. 124-1): **CT 124 Stmt.**
    Hanover's Responses (ECF Nos. 145-1, 149, 150): **Han. 124 Resp.**

***Moving papers:***

Christian Testimony's motion for reconsideration
    Christian Testimony's Motion (ECF No. 168-1): **CT 168 Mot.**
    Hanover's Opposition (ECF No. 175): **Han. 168 Opp.**
    Christian Testimony's Reply (ECF No. 176): **CT 168 Reply**

For Hanover's first motion for partial summary judgment (ECF No. 101):
    Hanover's Motion (ECF No. 101-3): **Han. 101 Mot.**
    Christian Testimony's Opposition (ECF No. 147): **CT 101 Opp.**
    Hanover's Reply (ECF No. 157): **Han. 101 Reply**

For Hanover's second motion for summary judgment (ECF No. 116):
    Hanover's Motion (ECF No. 116-1): **Han. 116 Mot.**
    Christian Testimony's Opposition (ECF No. 146): **CT 116 Opp.**

For Christian Testimony's motion for summary judgment (ECF No. 124):
    Christian Testimony's Motion (ECF No. 124-2): **CT 124 Mot.**
    Hanover's Opposition (as defendant on counterclaim) (ECF No. 145): **Han 124 Def. Opp.**

---

[8]    Hanover hired separate counsel to prosecute its claims and defend it against the counterclaims. Consequently, there are separate statements of material fact and moving papers on the two sets of summary judgment motions.

Hanover's Opposition (as plaintiff on claims) (ECF No. 148):
**Han 124 Pl. Opp.**
Christian Testimony's Reply (ECF No. 154): **CT 154 Reply**
Hanover's Sur-reply (ECF No. 161): **Han. 124 Sur-reply**
Christian Testimony's Sur-reply (ECF No. 165): **CT 124 Sur-reply**

***Declarations, Reports, Deposition Excerpts:***

Report of Thomas V. Ashbahian, Registered Architect, attached as Exhibit 27 to the Moskin Decl. (ECF No. 128-1): **Ashbahian Report**

Declaration of James Chang, dated February 16, 2014, submitted in support of Christian Testimony's motion for summary judgment (ECF No. 125): **Chang Decl.**

Supplemental Declaration of James Chang, dated February 17, 2014, submitted in opposition to Hanover's motions for summary judgment (ECF No. 146-7): **Supp. Chang. Decl.**

Transcript of Chiming Liou's deposition on October 11, 2013, attached as Exhibit 23 to the Chang Declaration (ECF No. 128-1): **Liou Dep.**

Declaration of Chiming Liou, dated February 11, 2014, submitted in support of Hanover's first motion for summary judgment (ECF No. 101-2): **Liou Decl.**

Second Amended Declaration of Liou, dated February 18, 2014, submitted in support of Hanover's second motion for summary judgment (ECF No. 140): **2d Am. Liou Decl.**

Supplemental Declaration of Liou, dated March 15, 2014, submitted in support of Hanover's opposition to Christian Testimony's motion for summary judgment (ECF No. 145-3): **Supp. Liou Decl.**

Second Supplemental Declaration of Liou, dated March 31, 2014, submitted in support of Hanover's first motion for summary judgment (ECF No. 157-2): **2d Supp. Liou Decl.**

Third Supplemental Declaration of Liou, dated April 2, 2014, submitted in support of Hanover's opposition to Christian Testimony's motion for summary judgment (ECF No. 161-1): **3d Supp. Liou Decl.**

Declaration of Jonathan Moskin, dated February 18, 2014, submitted in support of Christian Testimony's motion for summary judgment, ECF No. 128: **Moskin Decl.**

    Declaration of Wendy H. Smith, Esq., dated February 12, 2014, submitted in support of Hanover's first motion for summary judgment (ECF No. 111): **Smith Decl.**

    Report of Joseph P. Tomaino, AIA PP (Consulting Architect), dated January 14, 2014, attached as Exhibit F to the Smith Decl. (ECF No. 111-1): **Tomaino Report**

    Declaration of Kenneth Visbeen, dated February 25, 2014, submitted in support of Christian Testimony's ECF No. 124 motion for summary judgment (ECF No. 129): **Visbeen Decl.**

    Declaration of Peter Wells, dated February 12, 2014, submitted in support of Christian Testimony's ECF No. 124 motion for summary judgment (ECF No. 127): **Wells Decl.**